

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **EUAN MCLEOD,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD85912** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| **KRISTY MCLEOD,** | ) | **DECEMBER 19, 2023** |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Leslie Mayberry Schneider, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Karen King Mitchell,
Judge and Cynthia L. Martin, Judge

Kristy McLeod ("Wife") appeals from the trial court's judgment dissolving her marriage to Euan McLeod ("Husband") based on the terms of an oral settlement agreement. Wife asserts that the trial court committed error in denying her motion to set aside the oral settlement agreement; in entering a judgment that ordered maintenance to abate in a manner that varied from the oral settlement agreement; and in denying her motion to amend the judgment to address omitted marital property. Finding no error, we affirm.

## Factual and Procedural Background[1]

Husband and Wife married shortly after the birth of their first child in 2004, and had 2 additional children (collectively "the children") during the course of their marriage. On August 27, 2020, Husband filed a petition seeking to dissolve the marriage.

Husband and Wife filed separate statements of marital and non-marital assets and debts. Husband's statement, filed February 25, 2021, identified the following marital assets: (1) a home located in Hartsburg, Missouri (the marital home); (2) a home located in Eureka Springs, Arkansas; (3) a 1999 Porsche 911; (4) a 2000 Land Rover Discovery II; (4) a 1995 Chevrolet motor home; (5) a 2013 Porsche Panamera; (6) a 2017 Toyota Sequoia; (7) a 2005 Toyota truck; (8) a 2020 enclosed trailer; (9) a Yamaha motorbike; (10) a Bank of America account in Husband's name (account 5596) with a balance of $710,837; (11) a Bank of America account held jointly by Husband and Wife with a balance of $12,784 (account 8683); (12) a Bank of America account held jointly by Husband and Wife with a balance of $435 (account 3180); (13) a term life insurance policy insuring Husband with a death benefit of $3.451 million; (14) a term life insurance policy insuring Wife with a death benefit of $250,000; and (15) a 401(k) account and stocks held by Fidelity in Husband's name with a balance of $589,211. Husband's statement indicated that there were no non-marital assets. Husband's statement identified the following marital debts: (1) the outstanding mortgage on the marital home; (2) the

---

[1]We view the evidence and inferences drawn therefrom in the light most favorable to the trial court's judgment, disregarding all contrary evidence and inferences. *Kaderly v. Kaderly*, 656 S.W.3d 333, 336 n.1 (Mo. App. W.D. 2022).

2

outstanding mortgage on the Eureka Springs home; (iii) a small balance owed on the 2013 Porsche Panamera; and (iv) unpaid taxes owed to the Internal Revenue Service ("IRS") totaling $135,809.45.

Wife's statement of marital and non-marital assets and debts, filed March 16, 2021, varied slightly from Husband's and identified additional marital property as follows: (1) different balances in the Bank of America accounts[2]; (2) shares and retirement, pension, or profit-sharing accounts from Amazon, Comcast, HBO, and Time Warner; (3) specific household and personal goods; and (4) art, tickets, domain names, filming and production equipment, and intellectual property interests. Wife claimed that a motorcycle and jewelry were non-marital property, and identified two credit cards, noting both had zero balances.

Husband and Wife also filed separate income and expense statements. Husband's income and expense statement was filed on February 25, 2021, and indicated that he worked for HBO Services Corporation and had a gross monthly income of $34,710.22, monthly expenses for himself totaling $14,767, and monthly expenses for the children totaling $2,600. Husband's income and expense statement was never amended.

Wife's original income and expense statement was amended on two occasions. Wife's second amended income and expense statement was filed on February 21, 2022, and indicated that she was unemployed, that, she had monthly expenses for herself totaling $13,476.34, and monthly expenses for the children totaling $1,956.68, and that

---

[2]Wife's statement of marital and non-marital assets and debts did not include account numbers to assist in identifying the Bank of America accounts.

Husband's gross monthly income was $83,333, including salary and bonuses. The income Wife attributed to Husband was approximately two and a half times more than Husband represented in his February 25, 2021 income and expense statement.

In October 2021, Wife filed a motion for civil contempt because Husband withdrew $185,000 from their joint account (account 8683) in violation of an April 21, 2021 restraining order that prohibited the use of marital assets for other than ordinary expenses. During a hearing on November 16, 2021, Husband admitted that he withdrew $185,000 from the joint account, but testified that he did so "to protect marital assets." Husband also testified during the hearing about a $720,000 withdrawal he made from a marital account eight days before he filed the dissolution petition. That withdrawal was deposited into Bank of America account 5596. Husband testified that as of the date of the hearing, the balance in account 5596 was $576,000 as he had been using the account to pay for his living expenses. The trial court found Husband's withdrawal of $185,000 from a marital account to be in contempt of the April 21, 2021 temporary restraining order, and ordered Husband to place the money in a restricted bank account. No findings were made with respect to Husband's pre-dissolution petition deposit of $720,000 of marital funds into account 5596.

After being continued several times, the dissolution proceeding was scheduled for trial on March 11, 2022. On February 25, 2022, Wife served the registered agent for HBO Services Corporation ("HBO Services"), Husband's employer, with a subpoena directing its custodian of records to appear at a March 10, 2022 deposition, and to

4

produce documents related to Husband's employment and compensation. HBO Services did not appear at the March 10, 2022 deposition.

On March 11, 2022, the day set for trial, the parties advised the court they had reached a settlement resolving all issues. With the assistance of counsel, the parties spread the terms of the oral settlement agreement on the record through their testimony.

Husband first testified in detail about issues relating to agreed-upon parenting time, child support, and responsibility for other expenses for the children (matters that are not at issue in this appeal). With respect to all other issues, including the division of marital property and debts, and an award of maintenance, Husband testified in response to questions from his attorney as follows:

Q: Okay. With respect to the division of property, we had -- we had agreed upon how that, who was to get what, right?

A: Yep.

Q: There are two houses, one at Lake Champetra[3] that is to be awarded to [Wife], correct?

A: Correct.

Q: And there is a house in Eureka Springs, Arkansas that is going to be sold and the proceeds split, yes?

A: Correct.

Q: With a provision that any offer above -- $60,000 or above is to be accepted?

A: Correct.

---

[3]This is the marital home in Hartsburg, Missouri.

5

Q: There were some vehicles that [sic] each of you get the vehicle that you've been -- you've been using, correct?

A: Yes

Q: And any debt associated with those [sic] vehicle goes to the person who is receiving that vehicle, correct?

A: Correct.

Q: Okay. Bank accounts, there were -- all of the accounts are at Bank of America, correct?

A: Yes.

Q: And you are to receive the one that's 1565 which is the one you primarily use --

A: Correct.  Yep.

Q: Correct? There was $185,000 in savings in an account, I think 1292.

A: Yep.

Q: And that is to go to [Wife]?

A: Correct.

Q: And then all of the other accounts, 9590, 3180, and 2084 go to [Wife]?

A: Correct.

Q: Okay.  There was a joint account 8683, you don't even know what's in that at this point.  Should that just be closed out as that was a joint account?

A: I think it should be closed, yeah.

. . . .

Q: Okay.  Then you had a 401(k) through Fidelity, correct?

A: Uh-huh.

Q: Yes?

A. Yes. Yes.

6

Q: And that is to be split equally, 50/50?

A: Correct.

Q: Correct? And there -- you also own 24 shares of Amazon stock. That is to go to [Wife].

A: Correct.

Q: Okay. You are -- there's an IRS debt because the two of you had not timely filed your income tax returns for several years, correct?

A. Correct.

Q: And you are going to 100 percent responsible for payment of any tax owed, penalties, interest, whatever?

A: Correct. And it's a large amount.

Q: Yes. She is taking the debt that's outstanding on the Lake Champetra house, correct?

A: Correct.

Q: And her credit cards, right?

A: Yep.

Q: Okay, and there's a small debt owed on her vehicle. She is to pay that as well.

A: Yeah.

Q: Okay.

A: Yes.

Q: And then to equalize the property, as part of the property distribution, you were to pay her the -- the sum of $28,000, correct?

A: Yes. That's correct.

Q: And you'll do that with -- no later than within sixty days, right? But probably sooner.

A: Correct.

7

Q: Okay. With respect to -- oh there's also some artwork and some intellectual property that's going to you, correct?

A: Artwork, yeah.

Q: Okay, and then we also talked about maintenance, and we have agreed upon a term of $9,000 per month for 96 months, correct?

A: Yes. How many years is that? Sorry. Is that eight?

Q: Eight.

A: Yes, that's correct.

Q: Okay, and that's going to be non-modifiable, correct?

A: Correct.

Q: With a clause that should you lose your employment for -- not for your own doing, I believe it was no fault of your own, you'll have--there will be an abatement for six -- up to six months for you to secure other employment, correct?

A: Correct.

Q: Okay. Each side is to pay their own attorney's fees, correct?

A: Correct.

. . . .

Q: You're asking the Court to dissolve the marriage and approve the terms of this agreement?

A: Yes.

Q: And we'll be reducing this to written form and the two of you will sign that and we'll submit that to the court at a later date, correct?

A: Correct.

On cross-examination, Wife's attorney asked Husband whether he "receive[d] any stock options from [his] employment with HBO in the calendar year 2022?" Husband testified that he did not. Wife's attorney then asked Husband whether he "deferred any bonuses

8

from that same employment during the same time frame?"  Husband testified that he did not.

Wife then testified in response to questions from her attorney as follows:

Q: You heard the pattern of division of property leading to a compensating payment of $28,000.  Did you, ma'am?

A: Yes.

Q: Have you been engaged in communications, settlement discussions, and discussions with your own lawyer to the extent that you believe you're familiar with the nature and extent of the assets and potential liabilities in the marriage?

A: Yes.

Q: Okay, and understanding that the outcome of the property division case may not be exactly what you were going to ask the judge for, or exactly what [Husband] was going to ask the judge for, this is the result of substantial compromise by both of you, wouldn't you agree?

A: Yes.

Q: And given the pattern and division as described by [Husband], do you believe it to be fair and not unconscionable?

A: Yes.

Q: With regard to your own economic circumstances, you understand that you're receiving a non-modifiable maintenance of $9,000 a month for a period of eight years.  You understand that?

A: Yes.

Q: That maintenance, of course, would end upon your remarriage or the death of either party; do you understand that?

A: Yes.

Q: You also understand that the court could have given more or less and made it modifiable, which would lead you back to court periodically to determine your economic circumstances, right?

9

A: Yes.

Q: And we've taken that into consideration in agreeing to a fixed term of maintenance in that amount for that period of time, is that true?

A: Yes.

Q: Okay, and given the amount of child support and the maintenance payment that we've agreed to, are you able to meet your reasonable needs and those of the children on that allowance?

A: Yes.

During cross-examination, Wife testified in pertinent part as follows:

Q: Also if there -- there are certain items of personal property that [Husband] has mentioned that he would like, and I'm -- to see if you have a problem, there's a -- like a kilt and other items that belonged to [Husband's] father that he believes are still in your possession. Do you have any objection that those are returned to him?

A: He has asked me for those. I don't know where they are, but I don't have an objection to him having them.

During additional exchanges on the record, Husband agreed that Wife would be awarded the motorcycle and a truck that was being driven by one of the parties' children; and Wife confirmed that maintenance would terminate if she were to cohabitate with someone.

No exhibits were introduced during Husband's or Wife's testimony. The presumptive values ascribed by the parties to the divided marital property and debts, which would have informed the basis for agreeing to a $28,000 equalization payment, were not explained. The presumptive income and expenses for each party, which would have informed the basis for agreeing to the amount of $9,000 to be paid monthly to Wife as non-modifiable maintenance for eight years, were not explained. No mention was made during the March 11, 2022 hearing about Wife's unsuccessful effort to secure

10

subpoenaed documents from HBO Services regarding Husband's income during a deposition that had been scheduled for the day before. The parties' testimony about the terms of the oral settlement did not mention all of the property identified on the parties' statements of assets and debts, including account 5596, the life insurance policies, the trailer, or the motor home. Though Husband testified each party would get the vehicle he or she had been driving, that vehicle was not identified, and the remaining three vehicles included in the parties' statements of assets and debts were not addressed. Husband's testimony addressing the agreed upon division of account number 1565 to himself, and account numbers 9590, 3180, and 2084 to Wife, did not illuminate when those accounts were created, as none of them were identified in the parties' statements of assets and debts.[4] The parties' testimony about the terms of the oral settlement did not mention the debt outstanding on the Eureka Springs home that was identified in the parties' statement of assets and debts.

At the conclusion of the testimony, the trial court asked the parties to submit a signed parenting plan, signed separation agreement, and proposed judgment to the court by March 25, 2022. The requested pleadings were not submitted by that deadline.

On March 31, 2022, Wife filed a motion for contempt and asked the trial court to enter an order directing HBO Services to show cause why it should not be held in contempt for its failure to appear at the March 10, 2022 records deposition. Wife's

[4] Account 1292 was also not identified in either of the parties' statements of assets and debts, but as its balance was testified to by Husband to be $185,000, it can be reasonably inferred that this was the restricted account Husband was directed to create in response to the trial court's contempt order.

11

motion to compel asserted that "[r]eceipt of the information from HBO Services Corporation is material to the matters now pending or subject to finalization of the proceedings referenced above.'" The trial court entered an order to show cause on April 4, 2022.

Husband filed a motion for entry of judgment on April 6, 2022. The motion asserted that, despite the trial court's order directing the parties to file written settlement documents with the trial court by March 25, 2022, Wife "has failed and refused to approve and/or sign or otherwise comment on" the settlement documents prepared by Husband's counsel. The motion asked the trial court to enter a judgment reflecting the substance of the oral settlement agreement about which Husband and Wife testified.

Wife filed an objection to Husband's motion for entry of judgment on April 15, 2022, and asserted that material issues had not been resolved by the oral settlement agreement. The issues Wife identified were: (i) that the oral settlement terms spread on the record did not address responsibility for payment of the mortgage on the Eureka Springs home pending its sale though Husband's draft dissolution judgment directed that Wife would pay the mortgage pending sale; (ii) that the draft settlement documents did not address responsibility for payment of the mortgage on the marital home *pending* entry of a judgment of dissolution (although the oral terms spread on the record indicated Wife would be responsible for this debt after the entry of a judgment); and (iii) that the oral settlement terms spread on the record did not require Wife to refinance the mortgage on the marital home, though the draft settlement documents included that provision. Wife registered *no* objection to the entry of a judgment based on: (i) the pending order to show

12

cause directed to HBO Services that required the production of documents regarding Husband's employment; (ii) account 5596, the life insurance policies, the trailer, or the motor home identified in the parties' statement of assets and debts, but not mentioned during the March 11, 2022 hearing; or (iii) vehicles identified in the parties' statement of assets and debts that are not the vehicle each party regularly drives and that were not mentioned during the March 11, 2022 hearing.

During an April 28, 2022 hearing on Husband's motion for entry of judgment, Husband agreed that he would pay amounts owed on the Eureka Springs property pending its sale. Wife's counsel responded that he agreed "three of maybe four complaints" that Wife had with the draft settlement documents *had been resolved*. The practical effect of this affirmation was to "spread upon the record" additional agreed terms of the parties' oral settlement, albeit terms that were not spread on the record during the March 11, 2022 hearing. Wife cautioned, however, that although "there's a likelihood we will get resolved," no judgment could be entered until all "open" issues were resolved. Wife's counsel specifically identified as the "unresolved open" issue the provision in the draft documents requiring Wife to refinance the mortgage on the marital home, and noted that although the terms of the oral settlement had her assuming this debt, she had not agreed to refinance this debt as she "doesn't have any money and not a very good credit rating." Wife made no mention of the pending show cause order requesting documents regarding Husband's compensation from HBO Services during the hearing on Husband's motion for entry of judgment. At the conclusion of the hearing, the trial court took Husband's motion under advisement.

13

On April 28, 2022, Wife received documents from HBO Services in compliance with the trial court's show cause order. Wife filed an acknowledgment of receipt of the subpoenaed documents with the trial court on April 29, 2022. Wife's acknowledgment noted that the records provided by HBO Services "confirm[ed] material omissions related to the receipt, and non-disclosure, of bonuses and benefits earned during the marriage but not divided by the [trial court]," including (1) Husband received a 9.92 percent pay raise in January 2022; (2) Husband began receiving "dividend earnings" in February 2022; (3) Husband received a $389,550.09 bonus on February 24, 2022; and (4) subsequent to the hearing but before the settlement agreement was formalized by a written judgment, Husband was paid $136,342.53.

On April 29, 2022, Wife also filed a motion to set aside the oral settlement agreement ("April 2022 motion to set aside"). The April 2022 motion to set aside asserted that a material unresolved issue remained between the parties, namely Husband's "material omission" related to the receipt of the aforesaid compensation from HBO Services that had been earned during the marriage. Wife asserted that Husband's receipt of the aforesaid compensation from HBO Services was in direct contradiction to Husband's testimony at the March 11, 2022 hearing. The April 2022 motion to set aside also cross-referenced the objections Wife raised to Husband's April 6, 2022 motion for entry of judgment, although, as noted above, all of those objections had been discussed and resolved by agreement during the hearing on Husband's motion conducted the day before, with the exception of Wife's requirement to refinance the mortgage on the marital home.

14

Husband filed an objection to Wife's April 2022 motion to set aside on May 16, 2022, and asserted that a review of the audio transcript of the March 11, 2022 hearing confirmed that Husband testified truthfully that he had not received any stock options from HBO Services in 2022 and that he had not deferred any bonuses in 2022. Husband's objection reminded the trial court that Wife testified that the amounts of maintenance and child support[5] she would receive monthly were sufficient to meet the reasonable needs of herself and the children. Accordingly, Husband asserted that the documents recently produced by HBO Services afforded no basis to set aside the oral settlement agreement.

The trial court held a hearing on June 21, 2022, to consider Husband's still pending motion for entry of judgment, and Wife's April 2022 motion to set aside and took both matters under advisement. During the hearing, Husband's counsel argued that Wife was "trying to get out of the agreement that was made based upon [her counsel] receiving documents regarding [Husband's] income. There is nothing new about [Husband's] income. According to a contract that he has with his employer, he gets a bonus sometime between January and March. He did the year before." Husband's counsel further noted "we made the [oral settlement] agreement regarding maintenance and child support based upon [Husband's] income from 2021, which was substantial. He got a big bonus between January and March 2021. He got another one in 2022. . . . His income's probably going to be similar to what it was in 2021." In short, Husband's counsel argued that "[n]othing

_____

[5]The terms of the parties' oral settlement agreement that were spread upon the record obligated Husband to pay $2,500 a month in child support until the last of the parties' three children reached the age of eighteen (with the oldest child already having turned eighteen), and obligated Husband to pay all college expenses.

15

has changed about the parties' circumstances." Wife's counsel responded that the income Husband received "two weeks before our trial date and settlement discussions" in the amount of $525,892.62 "is marital property that has to be disposed of." Husband's counsel responded, "if you're going to treat it as property, then it isn't income. If it's income, it's income that was used to determine the amount of maintenance. [Wife is] trying to double-dip." Wife's counsel responded that as to Husband's pending motion for entry of judgment, he was standing "on the objections . . . raised back in April." Wife's counsel argued with respect to Wife's motion to set aside the oral settlement agreement that "I may not have asked the right question [of Husband]. I asked . . . have you deferred any bonuses?" Husband's counsel then argued that although the truthful answer was "no," Husband should have volunteered that he had just received "$525,000 . . . two weeks ago." Husband's counsel responded that "they knew what he earned in -- in 2021. They had a copy of his contract. They had a copy of his W-2's Nothing changed about their circumstances. . . . [Wife is] going to get her portion of it when he pays her the maintenance and child support to which she had already agreed, and [Husband] is currently paying her."

On June 23, 2022, the trial court denied Wife's "objection to entry of judgment and [April 2022] [m]otion to set aside [the] oral [settlement] agreement" in a docket entry. On July 25, 2022, the trial court entered a judgment dissolving the parties' marriage,

16

which was expressly found to have been entered pursuant to the parties' oral settlement agreement ("initial judgment").[6]

On August 16, 2022, Wife filed a motion to amend the initial judgment ("August 2022 motion to amend"). The motion asserted that the initial judgment erroneously found that the parties reached a settlement agreement resolving all issues because the oral settlement agreement failed to account for all of the parties' marital property and debts. Specifically, Wife complained: (i) that the oral settlement terms and the initial judgment failed to dispose of Bank of America accounts 1565, 8683, and "an undisclosed account maintained by [Husband] into which he deposited a bonus on February 23, 2022"; (ii) that the oral settlement terms and the initial judgment failed to dispose of the income, bonuses, and dividends Husband received in early 2022 as revealed by HBO Services' response to the show cause order; (iii) that the oral settlement agreement and initial judgment failed to address taxes owed to the Missouri Department of Revenue; and (iv) that the oral settlement agreement and initial judgment failed to address responsibility for real estate and personal property taxes on the marital home and the Eureka Springs home. Wife raised no other concerns with the oral settlement agreement or with the Judgment. The August 2022 motion to amend asserted that, because the oral settlement spread on the record and the initial judgment did not address or dispose of the marital property and debts identified above, the initial judgment was not final.

---

[6]A copy of the July 25, 2022 judgment was included in a supplemental legal file filed by Wife at this court's direction.

17

During a September 6, 2022 hearing, counsel for the parties reached an agreement to resolve some of Wife's concerns raised in the August 2022 motion to amend the initial judgment. For example, the initial judgment awarded account number 5596 to Husband, but failed to mention account 1565. Husband's counsel acknowledged that the initial judgment awarded the wrong bank account number to Husband, and explained that the error was because "we were using older documents" when "we were discussing settlement," suggesting that account 5596 had been replaced by Husband with account 1565 sometime between the filing of his statement of assets and debts on February 25, 2021, and the March 11, 2022 hearing where Husband testified that account 1565 was to be awarded to him but made no mention of account 5596. Wife's counsel expressed no further reservation about account 5596, and agreed that amending the initial judgment to instead award Husband account 1565 would resolve one of the concerns raised in her April 2022 motion to amend. Wife confirmed that the parties were asking the trial court to enter an amended judgment that corrected errors and omissions about which an agreement had been reached, including the corrected account number for the bank account awarded Husband, and an agreement that Husband's obligation to pay IRS tax debts would also include tax debts owed to the Missouri Department of Revenue.[7] The

_____

[7]The parties' express agreement on the record to correct the initial judgment to reflect these "agreements" supplements the agreed terms of settlement spread upon the record on March 11, 2022. In the case of the bank account awarded Husband, the "agreement" to change the reference in the initial judgment from account 5596 to account 1565 was consistent with Husband's testimony during the March 11, 2022 hearing. And although tax debt owed to the Missouri Department of Revenue was not expressly mentioned during the March 11, 2022 hearing, Husband did say that he was agreeing to assume and pay debt owed to the IRS because the parties had not filed tax returns for

18

parties confirmed their expectation that following the trial court's entry of an amended judgment, Wife would file another motion to amend to address remaining matters in dispute that had been identified in Wife's August 2022 motion to amend, including Wife's assertion that Husband had additional 2022 income, bonuses, and dividends from HBO Services that constituted marital property that needed to be divided.

Per the parties' request, the trial court thus entered an amended judgment on September 9, 2022 ("Judgment"). The Judgment entered findings of fact, conclusions of law, and judgment "based upon the parties' oral agreement placed upon the record which resolved all pending issues between the parties." The Judgment found that "[a]ccording to the terms placed upon the record," Wife would receive the 2021 Toyota Sequoia and the obligation to pay the remaining debt owed on the vehicle; the Bayliner boat and trailer; the 2000 Land Rover Discovery; the 2020 enclosed trailer; the 2005 truck; Bank of America bank accounts identified as accounts 2084, 1292, 9590, and 3180 (with the understanding that account 8683 would be closed and divided equally); 50 percent of Husband's Fidelity 401(k) accounts; all life insurance policies insuring Wife's life; twenty-four shares of Amazon stock; all of her clothing, jewelry, and personal effects; all household and personal goods in her possession; the marital home located in Hartsburg, Missouri along with the obligation to assume responsibility for the mortgage on the home; and an equalization payment to be paid by Husband in the amount of $28,000. The Judgment also found that "[a]ccording to the terms placed upon the record," Husband

_____

several years, an explanation that logically would extend as well to taxes owed to the State.

19

would receive the 1999 Porsche 911; the 1995 Chevrolet motor home; the 2013 Porsche Panamera; the bank account identified as account 1565; artwork; film and production equipment; intellectual property and domain names; all life insurance policies insuring Husband's life; 50 percent of Husband's Fidelity 401(k) accounts; all of his clothing, jewelry, and personal effects; household and personal goods in his possession; and personal property that were gifts to Husband from his father. The Judgment ordered the Eureka Springs home to be sold, with any offer of $60,000 or more to be accepted, and further ordered that Husband would be responsible for paying the home's mortgage, taxes, and insurance until the sale. The Judgment provided that Husband would receive credit for all payments made on the Eureka Springs home after March 11, 2022, and that after applying this credit, the parties would split the proceeds of the sale equally. The Judgment ordered Husband to pay any tax debt owed to the IRS and Missouri Department of Revenue that accrued during the marriage. The Judgment further provided that any debt incurred by either party in their sole name after their July 2020 separation would be the responsibility of that party. The Judgment also set forth the following maintenance provision, based on the agreement of the parties:

> [Husband] shall pay to [Wife] the sum of [$9,000] per month as non-modifiable maintenance beginning April 1, 2022. Said obligation shall continue for ninety-six (96) months or eight (8) years from that date at which time [Husband's] obligation shall cease, if not sooner terminated. [Husband's] obligation to pay maintenance to [Wife] shall terminate upon the occurrence of one of the following events: [Husband's] death, [Wife's] death, [Wife's] remarriage or if [Wife] enters into a "marriage-like" relationship with another person to whom she is not related by either blood or marriage for a period of thirty (30) days or more. Furthermore, the parties agreed that at any time during the period when [Husband] owes maintenance to [Wife], [Husband's] obligation shall fully abate for up to six

20

(6) months per instance should [Husband] become unemployed or his employer terminates his contract through no fault or voluntary action of his own. The terms of maintenance are non-modifiable.

Finally, the Judgment adopted and attached a joint parenting plan for the parties' unemancipated children and ordered Husband to pay $2,500 a month in child support until the youngest child reached the age of eighteen, and ordered Husband to pay all college expenses.

Wife filed a motion to amend the Judgment on September 19, 2022 ("September 2022 motion to amend"). Wife's September 2022 motion to amend repeated the unresolved issues that were raised in Wife's August 2022 motion to amend the initial judgment, namely that: (i) the Judgment failed to dispose of accounts 8683,[8] and "an undisclosed account maintained by [Husband] into which he deposited a bonus on February 23, 2022;" (ii) the Judgment failed to dispose of the income, bonuses, and dividends Husband received in early 2022 as revealed by HBO Services' response to the show cause order; and (iii) the Judgment failed to address responsibility for real estate and personal property taxes on the marital home and the Eureka Springs home.

The September 2022 motion to amend also raised new issues either not raised in the August 2022 motion to amend the initial judgment or not discussed during the hearing on that motion, namely that: (i) the Judgment failed to dispose of account 5596 (despite Wife's counsel's agreement during the September 6, 2022 hearing that reference to

_____

[8]This assertion is plainly erroneous as the Judgment did address account 8683, noting it was to be closed and the proceeds divided, consistent with the terms of the oral settlement agreement spread on the record.

21

account 5596 in the initial judgment was a scrivener's error based on "old documents," and that the referenced account number should instead have been 1565); (ii) it was possible that account 5596 might still be in existence (in addition to account 1565); (iii) that the provision in the Judgment crediting Husband for all mortgage, tax, and insurance payments made on the Eureka Springs home prior to its sale and before dividing the proceeds would credit Husband twice for principal reductions (though this provision in the Judgment is identical to the same provision in the initial judgment as to which no objection was registered at the hearing on the August 2022 motion to amend); and (iv) that the provision in the Judgment abating Husband's maintenance obligation was not supported by the evidence as the parties did not agree to "fully abate" maintenance in the event of Husband's involuntary unemployment (though this provision in the Judgment is identical to the same provision in the initial judgment as to which no objection was registered in the August 2022 motion to amend).

The trial court held a hearing on Wife's September 2022 motion to amend on October 28, 2022, during which Husband testified upon examination by Wife's counsel. Wife subpoenaed the attendance of a records custodian for Husband's employer though no one appeared. At the conclusion of Husband's testimony, the hearing was continued to permit Wife to subpoena additional records from Husband's employer. However, no further proceedings were conducted on Wife's September 2022 motion to amend, and the trial court made no ruling on the motion. As a result, the September 2022 motion to amend was deemed denied and the Judgment became final on December 19, 2022. *See* Rule 81.05(a).

22

Wife filed this timely appeal.

## Standard of Review

We review the judgment in a dissolution proceeding using the standard of review set forth in *Murphy v. Carron*, 536 S.W.3d 30, 32 (Mo. banc 1976). *Alport v. Alport*, 571 S.W.3d 680, 682 (Mo. App. W.D. 2019). We will affirm the judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Kaderly v. Kaderly*, 656 S.W.3d 333, 338 (Mo. App. W.D. 2022) (quoting *Reichard v. Reichard*, 637 S.W.3d 559, 569 (Mo. App. W.D. 2021)).

In considering whether the trial court erroneously declared or misapplied the law, we defer to the trial court's factual determinations but otherwise review the trial court's legal conclusions and application of law to the facts *de novo. Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. banc 2023). An alleged misapplication of the law will only constitute reversible error if the misapplication of law "materially affects the merits of the action [so that we have] a firm belief that the . . . judgment is wrong." *Odermann v. Mancuso*, 670 S.W.3d 461, 471 (Mo. App. W.D. 2023) (quoting *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020)).

## Analysis

Wife's raises three points on appeal. In her first point relied on, Wife asserts that the trial court erred and misapplied the law when it denied Wife's April 2022 motion to set aside the oral settlement agreement because the parties were not then in agreement and material issues remained unresolved. Wife's second point relied on argues that the

trial court erred in entering the Judgment because it ordered maintenance to fully abate on each instance of Husband's unemployment when no substantial evidence supported this provision as it was inconsistent with the oral settlement agreement terms spread on the record. Wife's third point relied on asserts that the trial court erred in denying Wife's September 2022 motion to amend the Judgment because the Judgment was not final as it failed to dispose of marital assets of substantial value. We address the points in order.

***Point One: The trial court did not err or misapply the law when it denied Wife's April 2022 motion to set aside the oral settlement agreement***

Wife's first point relied on asserts that the trial court erred and misapplied the law when it denied Wife's April 2022 motion to set aside the oral settlement agreement because the parties were not then in agreement and material issues remained unresolved as (a) there was no written separation agreement or parenting plan; (b) the terms of the oral agreement were not sufficiently spread on the record to minimize recourse to litigation and "did not address material terms, omitted assets and debts;" and (c) subsequent corrections confirm that the terms of the oral separation agreement were not sufficiently spread upon the record.

> **An oral settlement agreement can be enforced without a written separation agreement or parenting plan if spread upon the record, and can be supplemented by additional agreements thereafter spread upon the record**

Section 452.325.1 allows parties to "enter into a written separation[9] agreement containing provisions for the maintenance of either of them, the disposition of any

---

[9]The terms "settlement" and "separation" are used interchangeably in this Opinion to refer to the oral agreement reached between Husband and Wife to resolve the issues in their dissolution proceeding.

24

property owned by either of them, and the custody, support and visitation of their children" in order "[t]o promote amicable settlement of disputes between the parties to a marriage attendant upon . . . the dissolution of their marriage."[10] The terms of a section 452.325 separation agreement as to the division of property and maintenance[11] are "binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the settlement agreement is unconscionable." Section 452.325.2.

While section 452.325 authorizes written separation agreements, Missouri courts have long held that oral settlement agreements are permissible under section 452.325. *See Carter v. Carter*, 869 S.W.2d 822, 828 (Mo. App. W.D. 1994) ("The mere fact that the parties to a dissolution of marriage action may dispose of their property through a written separation agreement does not imply that a written separation agreement is the only way the parties may dispose of their property"). To be binding, an "'[o]ral agreement[] as to property division [must be] entered into in open court by parties represented by counsel,'" the agreement must be "'spread upon the record,'" and "[t]he parties must be presently in agreement at the time the agreement is presented to the court for its approval." *Dahn v. Dahn*, 256 S.W.3d 187, 188-89 (Mo. App. W.D. 2008) (quoting *Carter*, 869 S.W.2d at 829).

---

[10]All statutory references are to RSMo 2016 as supplemented through August 27, 2020, unless otherwise indicated.

[11]A separation agreement's provisions related to child custody, support, and visitation are not binding on the trial court. *See* section 452.325.2.

Husband and Wife plainly reached an oral settlement agreement and spread that agreement on the record. They did so initially at the March 11, 2022 hearing. And, they supplemented their oral settlement agreement terms at subsequent hearings on the record, as explained in the factual background portion of this opinion, when "contested" or "omitted" terms were represented to have been resolved by agreement. Though an oral settlement agreement must be sufficiently spread upon the record, there is no authority for the proposition that said "record" can only be made in a single hearing. Moreover, as the aforesaid precedent clearly establishes, the mere fact that the parties never sign a written separation agreement or parenting plan is not a legal obstacle to the entry of a judgment enforcing an oral settlement agreement that has been sufficiently spread upon the record. Subsections (a) and (c) of Wife's first point on appeal are denied.

**The oral settlement agreement did not fail to address material terms, assets, or debts that were brought to the trial court's attention in the April 29, 2022 motion to set aside the oral settlement agreement**

In the argument portion of her brief, Wife identifies seven terms, assets, or debts she claims were material and not addressed in the oral settlement agreement: (1) account 5596; (2) bonus and incentive income Husband received from HBO Services in early 2022; (3) restricted stock units Husband received from HBO Services in early 2022; (4) responsibility for the payment of real estate and personal property taxes; (5) allocation of credit for payments made on the Eureka Springs home pending its sale; (6) delivery of personal property to Husband; and (7) the full abatement of maintenance in each instance of Husband's involuntary loss of employment.

26

An oral agreement is sufficiently spread upon the record if the agreement is specific enough for the trial court to determine how the marital property should be divided based on the record, including testimony and exhibits entered into evidence. *Carter*, 869 S.W.2d at 829. If evidence of an oral settlement agreement is so imprecise as to lead to additional litigation to determine how marital property should be divided, then the oral settlement agreement is not sufficiently spread upon the record. *Id.* Determining whether the oral settlement agreement was sufficiently spread upon the record requires a careful comparison of the marital property in existence, the record made before the trial court as to the disposition of such marital property, and the substance of the settlement agreement set forth in the dissolution judgment. *See id.* at 829-30. If the dissolution judgment disposes of marital property about which there was no evidence of an agreement as to its disposition, then the trial court has erred in dividing such marital property under the guise of a non-existent agreement. *Id.* at 830.

We do not agree that the seven issues Wife identifies in her brief as terms, assets, or debts not addressed by the oral settlement agreement support a conclusion that the trial court erred and misapplied the law when it denied Wife's April 2022 motion to set aside the oral settlement agreement because the oral agreement was not sufficiently spread upon the record.[12]

---

[12]The manner in which the parties' oral settlement agreement was spread upon the record was not a model of clarity, as we comment upon in the factual background section of this opinion. However, many of the terms in the Judgment that were not expressly addressed in the March 11, 2022 hearing, or on the record in other subsequent hearings, are not raised as issues in this appeal, including, for example, vehicles awarded to the parties that were not the vehicle each spouse regularly drives, the motor home, the trailer,

27

As a preliminary matter, five of the seven "unresolved issues" identified in Wife's brief as material terms, omitted assets or debts that rendered the trial court's denial of the April 2022 motion to set aside erroneous were not raised in that motion, and are thus not preserved for our review. We will not find trial court error when an issue was not placed before the trial court. *Lewis v. Lewis*, 671 S.W.3d 734, 741 (Mo. App. W.D. 2023) ("In general, where there is no pleading or argument in the record concerning the issue presented on appeal and the issue is raised for the first time on appeal, it has not been preserved for review.") (quoting *In re S.H.P. v. D.B.*, 638 S.W.3d 524, 531 (Mo. App. W.D. 2021)); *Loutzenhiser v. Best*, 565 S.W.3d 723, 730 (Mo. App. W.D. 2018).

The April 2022 motion to set aside the oral settlement agreement identified only two categories of concern: (i) the incorporation by reference of issues "previously addressed in [Wife's] Objection to Entry of Judgment," and (ii) Wife's contention that bonuses, a pay raise, and dividends Husband received from HBO Services in early 2022 needed to be, but had not been, divided by the oral settlement agreement.

With respect to the first category, we have already explained that all but one of Wife's written objections to Husband's April 15, 2022 motion for entry of judgment were resolved by agreement "spread on the record" during the April 28, 2022 hearing, leaving

and life insurance policies. But, it is clear from this contorted procedural record that Wife reviewed draft settlement documents prepared by Husband's counsel, and had every opportunity to raise objections to those documents (and did so). This permits the reasoned inference that terms in the draft settlement documents as to which no objection was registered were acceptable to Wife. Though some of those terms were not spread upon the record in a manner that can be verified, we will not find error in the Judgment's inclusion of terms as to which no objection has been raised.

28

unresolved a single objection to a proposed term in the draft settlement documents that required Wife to refinance the mortgage on the marital home in lieu of simply assuming that debt. That "unresolved objection" was rendered moot by the Judgment, which does not require Wife to refinance the mortgage on the marital home, and instead only requires Wife to assume the mortgage on the marital home consistent with the terms of the oral settlement agreement spread on the record on March 11, 2022.

The second category raised in Wife's April 2022 motion to set aside the oral settlement is loosely captured in issues (2) and (3) identified in Wife's brief relating to bonus and incentive income Husband received from HBO Services in early 2022, and restricted stock units Husband received from HBO Services in early 2022. We discuss the merits of this preserved issue *infra*.

However, the remaining five issues identified in Wife's brief (account 5596; responsibility for the payment of real estate and personal property taxes; allocation of credit for payments made on the Eureka Springs home pending its sale; delivery of personal property to Husband; and the full abatement of maintenance in each instance of Husband's involuntary loss of employment) were not raised in the April 2022 motion to set aside the oral settlement agreement, and cannot be relied on by Wife in this appeal to ascribe error to the trial court in denying said motion. *Lewis*, 671 S.W.3d at 741.

Wife's preserved contention that it was error and a misapplication of the law to deny the April 2022 motion to set aside the oral settlement agreement because the agreement spread upon the record failed to divide income Husband received from his employer in the two-week period preceding the March 11, 2022 hearing is without merit.

29

Wife filed a second amended statement of income and expenses in February 2022, just days before the oral settlement agreement was reached. In that statement she represented her belief that Husband's gross monthly income, including salary *and bonuses*, was $83,333 a month (essentially $1,000,000 a year). Wife's April 2022 motion to set aside the oral settlement agreement did not explain how or even whether the records she ultimately received from HBO Services materially altered this belief. Wife knew before finalizing the oral settlement with Husband that she had sought, but did not have, records from HBO Services to verify Husband's income, and in fact, it was only the day prior that HBO Services' records custodian failed to appear for a deposition with those sought-after records. Yet, Wife testified during the March 11, 2022 hearing that she believed she was sufficiently "familiar with the nature and extent of the assets and potential liabilities in [the] marriage" to confirm that the oral settlement was fair and not unconscionable. She also confirmed that the amount negotiated for maintenance and child support would permit her to meet her reasonable needs. Wife did not qualify her testimony to suggest that her commitment to the oral settlement agreement was dependent on securing records from Husband's employer to verify her assumptions about his projected 2022 compensation.

Wife did not establish in her April 2022 motion to set aside, or during the June 21, 2022 hearing on that motion, that the income Husband received in early February 2022 was out of the ordinary when compared to his compensation in prior years. Instead, the trial court heard argument from Husband's counsel during the June 21, 2022 hearing that Husband routinely received a substantial bonus between January and March of each

30

year; that Wife was aware of this fact; and that in any event, income received by Husband was not an asset to be divided, but was instead relevant to calculating child support and maintenance--amounts agreed upon by Wife and that were not being challenged as having been unfairly calculated.

The trial court did not err, therefore, in denying Wife's April 2022 motion to set aside the oral settlement agreement based on an argument that the agreement failed to divide income husband received in the two weeks preceding the March 11, 2022 hearing. Subsection (b) of Wife's first point on appeal is denied.

### *Point Two: The Judgment's maintenance provision is not inconsistent with the oral settlement agreement terms spread on the record*

In her second point on appeal, Wife argues that the trial court committed error when it entered the Judgment because the maintenance provision in the Judgment is not supported by substantial evidence as it is inconsistent with the oral settlement agreement terms spread on the record. Specifically, Wife complains that the maintenance provision in the Judgment improperly ordered maintenance to "fully" abate upon Husband's involuntary unemployment, and to do so "per instance" of Husband's involuntary unemployment, when the oral settlement agreement contemplated abatement on a single occasion, and even then, not full abatement. Though Wife characterizes her point on appeal as a sufficiency of the evidence challenge, her challenge is instead a challenge to the form of the Judgment, as Wife claims the Judgment inaccurately captured the agreement reached by the parties and spread upon the record.

31

At the March 11, 2022 hearing, Husband testified as follows about the parties' agreement regarding maintenance:

Q: Okay, and then we also talked about maintenance, and we have agreed upon a term of $9,000 per month for 96 months, correct?

A: Yes. And how many years is that? Sorry. Is that eight?

Q: Eight.

A: Yes, that's correct.

Q: Okay, and that's going to be non-modifiable, correct?

A: Correct.

Q: With a clause that should you lose your employment for -- not for your own doing, I believe it was no fault of your own, you'll have -- there will be *an* abatement for six -- up to six months for you to secure other employment, correct?

A: Correct.

(Emphasis added.) Wife's testimony confirmed her agreement with Husband's testimony as to the amount and term of non-modifiable maintenance. Wife also testified that she understood that in reaching an agreement on maintenance, she took into consideration that the trial court could have awarded more or less maintenance, and could have made maintenance modifiable based on economic circumstances.

The Judgment included the following maintenance provision:

According to the parties' agreement, [Husband] shall pay to [Wife] the sum of Nine Thousand Dollars ($9,000.00) per month as non-modifiable maintenance beginning April 1, 2022. Said obligation shall continue for ninety-six (96) months or eight (8) years from that date at which time [Husband's] obligation shall cease, if not sooner terminated. [Husband's] obligation to pay maintenance to [Wife] shall terminate upon the occurrence of one of the following events: [Husband's] death, [Wife's] death, [Wife's] remarriage or if [Wife] enters into a 'marriage like'

32

relationship with another person to whom she is not related by either blood or marriage for a period of thirty (30) days or more. Furthermore, the parties agreed that at any time during the period when [Husband] owes maintenance to [Wife], [Husband's] obligation shall *fully* abate for up to six (6) months *per instance* should [Husband] become unemployed or his employer terminates his contract through no fault or voluntary action of his own. The terms of maintenance are non-modifiable.

(Emphasis added.) Wife asserts that the inclusion of the adverb "fully" to modify "abate," and the prepositional phrase "per instance" to describe the parties' agreement about when Husband's maintenance obligation could abate, were not consistent with the agreement spread upon the record.

Wife supports her argument that the parties agreed to permit abatement on only one occasion by highlighting Husband's counsel's use of the indefinite article "an" to describe the agreed upon abatement in the last question she asked Husband on the subject during the March 11, 2022 hearing. Wife urges that this reflected an agreement to permit abatement on only one occasion. But, Wife's urged construction of Husband's testimony is overly pedantic. Husband's testimony read in its totality and in context reflects an uncomplicated understanding that the maintenance obligation would abate for up to six months following involuntary unemployment at any time during the eight-year non-modifiable maintenance period, and that the abatement would extend for up to six months to permit Husband to find new employment. Engrafting an unexpressed limitation on the number of times Husband's maintenance obligation could abate materially modifies Husband's straightforward testimony.[13]

_____

[13]In any event, Wife's argument is unpreserved for our review. Though Wife's September 2022 motion to amend the Judgment challenged whether the maintenance

Wife also complains that the parties did not agree to "fully" abate maintenance during a period of Husband's involuntary unemployment, and that the parties instead intended abatement only to be the extent warranted by Husband's ability to pay maintenance despite involuntary unemployment. There is nothing in Husband's March 11, 2022 testimony, however, that permits a conclusion that the agreement to abate maintenance was conditioned on Husband's overall economic circumstances, an interpretation of Husband's testimony that is fundamentally inconsistent with the concept of non-modifiable maintenance. Had the parties intended the abatement of Husband's maintenance obligation to be subject to Husband's ability to pay maintenance in whole or in part despite involuntary unemployment, it is reasonable to assume the parties' agreement would have so stated. Instead, the parties agreed that the maintenance obligation would "abate." When used in reference to a legal obligation, "abatement" means "[t]he act of eliminating or nullifying." *Black's Law Dictionary* 3 (11th ed. 2019). The use of "fully" by the Judgment to modify the verb "abate" was merely superfluous, and did not modify the commonly understood meaning of the term. The Judgment's

provision in the Judgment was consistent with the maintenance agreement spread upon the record during the March 11, 2022 hearing, she challenged only the Judgment's use of the word "fully" in reference to the amount of the abatement. She did not challenge the Judgment's use of the phrase "per instance." Rule 78.07(c) requires that "[i]n all cases, allegations of error relating to the form or language of the judgment . . . must be raised in a motion to amend the judgment in order to be preserved for appellate review." The purpose of this rule is "to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings." *Estate of Hutchison v. Massood*, 494 S.W.3d 595, 608 n.13 (Mo. App. W.D. 2016) (quoting *Barth v. Barth*, 372 S.W.3d 496, 517 (Mo. App. W.D. 2012)).

maintenance provision is not inconsistent with the oral settlement agreement spread upon the record.

Wife's second point on appeal is denied.

### *Point Three: The Judgment did not fail to dispose of known marital assets of substantial value and is final*

In her third point on appeal, Wife argues that the trial court misapplied the law when it denied her September 2022 motion to amend the Judgment because the Judgment was not final as it failed to dispose of known marital assets, namely account 5596 and the income, bonuses, and incentives Husband received in early 2022 from HBO Services. Wife relies on *Spaudlin v. Spaudlin*, 945 S.W.2d 665, 668 (Mo. App. W.D. 1997), which held that:

> [W]hen undistributed property is discovered before the time for appeal has run, the appellate court, when presented with an appeal raising the issue of undistributed property, must dismiss the appeal because the trial court has not exhausted its jurisdiction and has not rendered a final judgment from which an appeal can be taken.

(quoting *Meltzer v. Meltzer*, 775 S.W.2d 120, 120-21 (Mo. banc 1989)).  Wife has not asked us to dismiss her appeal.  She has asked us to reverse the Judgment because it is not final.  If Wife's contention is correct, however, our only recourse would be to dismiss her appeal and to remand this matter to the trial court for further proceedings.

That will not be our directive.  The record in this case is not sufficient to permit a conclusion that account 5596 was in existence when the Judgment was entered, and the record is not sufficient to permit the conclusion that Husband's income received in early 2022 was a marital asset that needed to be divided as opposed to reasonably anticipated

35

marital income relevant to the already agreed upon provisions for maintenance and child support.

**Account 5596**

Wife's contention that account 5596 existed at the time the oral settlement was spread on the record, and at the time the Judgment was entered pursuant to the oral settlement, is not supported by the record. In February 2021, Husband identified Bank of America account 5596 in his statement of marital assets and debts, and indicated that the account's balance was $710,837. In November 2021, Husband testified that account 5596 was created when he withdrew $720,000 from marital accounts just days before filing his dissolution petition. Husband also testified at the November 2021 hearing that account 5596 had an approximate balance at that time of $576,000, and had been used to pay Husband's living expenses since the dissolution petition was filed.

On March 11, 2022, when the oral settlement agreement was spread on the record, there was no reference made to account 5596. Husband did testify, however, that the parties had agreed to set over to him account 1565, an account that was not identified in Husband's February 2021 statement of marital assets and debts, but an account Husband's testimony confirmed was "the one [he] primarily use[d]" to pay his living expenses.

Wife knew about account 5596, knew it was where $720,000 of marital property had been placed by Husband just days before he filed a dissolution petition, and knew that as of November 2011, the account was being used by Husband to pay his living expenses, and had a remaining balance of $576,000. Yet, Wife failed to identify account 5596 as a marital asset the parties failed to divide in the oral settlement agreement in her

36

April 15, 2022 objection to Husband's April 6, 2022 motion for entry of judgment. And, Wife failed to identify account 5596 as a marital asset the parties failed to divide in the oral settlement agreement in her April 2022 motion to set aside the oral settlement agreement. It is implausible that Wife "forgot" about such a sizeable marital asset if she had reason to believe it still existed at the time of the March 11, 2022 hearing.

Instead, the record supports the conclusion that Wife believed the account no longer existed as of March 11, 2022. When the trial court entered the initial judgment on July 25, 2022, it included a provision awarding account 5596 to Husband. When Wife filed her August 2022 motion to amend the initial judgment, she argued that the initial judgment omitted reference to account 1565, the account Husband testified should be awarded to him during the March 11, 2022 hearing. During a September 6, 2022 hearing on Wife's August 2022 motion to amend the initial judgment, Husband's counsel told the trial court that she and Wife's counsel had already discussed the erroneous reference to account 5596 in the initial judgment. Husband's counsel advised the trial court that the the proposed initial judgment submitted for the trial court's entry was prepared using "older documents" (in likely reference to Husband's February 2021 statement of marital assets and liabilities), and that the reference to account 5596 in the initial judgment was a scrivener's error, as the reference should have been to account 1565. Husband's counsel later said "it was the bank account number that was awarded to my client, I used the wrong number -- so that will be changed." After referring to this error in the initial judgment (along with a handful of others), Wife's counsel confirmed "those are the ones we certainly agree to," confirming that Wife agreed the initial judgment's reference to

37

account 5596 was in error and needed to be changed to account number 1565. In reliance on the parties' request to do so, the trial court thus entered the Judgment to correct errors in the initial judgment that had been resolved by agreement. Where the initial judgment had awarded account 5596 to Husband, the Judgment awarded account 1565 to Husband.

Wife then inexplicably complained in her September 2022 motion to amend that the Judgment omitted reference to account 5596. During an October 28, 2022 hearing on Wife's September 2022 motion to amend, Wife's counsel elicited testimony from Husband. Not a single question was asked of Husband about account 5596. At one point, Husband was asked about the number of accounts at Bank of America, and whether all of the accounts are referenced in the Judgment. Husband responded that he thought there might be seven or eight accounts, and that he believed they were all referenced in the Judgment.

There was no evidence in the record to permit the conclusion that account 5596 still existed at the time the oral settlement agreement was spread on the record, or at the time the Judgment was entered. In her appellate brief, Wife concedes that she "has no knowledge whether . . . account [5596] was either closed or open on March 11, 2022," and further acknowledges "that the . . . Judgment awarded a known amount (BOA #1565) to [Husband]." [Appellant's Brief, p. 23 n.9]

The trial court did not err in entering a Judgment that failed to address account 5596.[14]

---

[14]If it is later established that account 5596 did, in fact, still exist at the time of the oral settlement agreement spread on the record on March 11, 2022, and/or at the time of

(i)     **Income, bonuses, and incentives Husband received in early 2022 from HBO Services**

Wife contends that the Judgment is not final because it did not divide income, bonus, and incentives Husband received in early 2022 from HBO Services. Wife's pleadings filed with the trial court represented the amount Husband received in the two weeks before the March 11, 2022 hearing to be approximately $525,000.

Wife's argument disregards that income, though marital property, is not typically a divisible asset in a dissolution proceeding, and is instead relevant to determining such things as child support and maintenance.[15] Wife has never alleged that the income-driven terms of the oral settlement agreement she reached were induced by omitted material information about Husband's income. And, we question whether she could persuasively do so, as she alleged in the second amended income and expense statement she filed in February 2022 (shortly before the March 11, 2022 oral settlement was reached) that Husband's gross income was essentially $1,000,000 a year, including salary *and bonuses*. The evidence Wife later adduced during the October 28, 2022 hearing on her September 2022 motion to amend the Judgment established that as of late September 2022, Husband had received salary, bonuses, dividends, and other incentives from his employer in the

---

the Judgment, then Wife would be free to raise that issue with the trial court in an appropriate Rule 74.06(b) proceeding. *See Olofson v. Olofson*, 625 S.W.3d 419, 436-37 (Mo. banc 2021) (discussing availability of Rule 74.06(b)(2) to adjudicate a claim that spouse committed fraud as related to the division of property where relief sought is to set aside provisions in the dissolution judgment dividing property without reinstating the marriage); *Iverson v. Wyatt*, 969 S.W.2d 797, 800 (Mo. App. W.D. 1998) (discussing use of Rule 74.06 to address marital property omitted from final dissolution decree).

[15]Here, of course, Wife agreed to non-modifiable maintenance.

approximate amount of $1,200,000. This amount is not so materially different from Wife's projections as to cause alarm, particularly as Husband testified he was unemployed at that time, and had been since approximately July 2022. Moreover, Wife agreed to the terms of the oral settlement even though she knew she had not yet received documents that had been subpoenaed form husband's employer. There was insufficient evidence of a marital asset that did not get divided by the Judgment represented by Husband's income, bonus, or dividends received from his Employer in the two weeks preceding the March 11, 2022 hearing.

We recognize that Wife's September 2022 motion to amend the Judgment intimates that Husband has an undisclosed bank account into which some of the income he received from Employer in early February 2022 may have been deposited. And, we recognize that Wife's September 2022 motion to amend the Judgment intimates that the allegedly undisclosed bank account may be account 5596, and thus speculates that both account 5596 and account 1565 may still have been in existence at the time of the March 11, 2022 hearing, and at the time the Judgment was entered.

Wife's speculation is not evidence, however. Wife's counsel spent considerable time examining Husband during the October 28, 2022 hearing on Wife's September 2022 motion to amend the Judgment, and established that employer's records showed that a substantial portion of the compensation Husband received from his employer in 2022 was deposited into account 1565, but that some compensation was deposited into an account the employer's direct deposit records called "savings account." Husband could not recall the account number for this "savings account," did not know whether the account was

40

separate from account 1565, and had no access to documents to secure that information during the hearing. As a result, at the end of the hearing, Wife was granted leave to reconvene the hearing at a later date to permit Wife to secure and admit additional evidence in the form of records from Husband's employer to establish the actual accounts into which Husband's early 2022 employment compensation had been deposited. The trial court advised she would await this further evidence before ruling the motion.

It does not appear that a resumed hearing took place before the time to rule the September 2022 motion to amend the Judgment expired. As a result, the motion was never ruled, and was deemed denied.[16]

There was insufficient evidence at the time Wife's September 2022 motion to amend the Judgment was filed to permit the conclusion that Husband had an undisclosed (and thus undivided) bank account into which income received in early February 2022 was deposited. The trial court did not err in entering a Judgment that failed to address Husband's income, bonus and/or dividends received in the two-week period preceding the March 11, 2022 hearing where the terms of the oral settlement agreement were spread upon the record, or that failed to address a speculative undisclosed bank account not divided by the Judgment.[17]

---

[16]Under the circumstances, we reject Husband's disingenuous contention on appeal that the deemed denial of Wife's September 2022 motion to amend the Judgment requires us to conclude that the trial court made a credibility determination regarding Husband's secreting of income and/or of an undisclosed bank account.

[17]If it is later established that Husband did, in fact, have an undisclosed bank account at the time of the March 11, 2022 hearing and/or at the time of the Judgment into which income that could be characterized as marital property was deposited, then Wife

41

Wife's point three on appeal is denied.

**Conclusion**

The Judgment is affirmed.[18]

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

would be free to raise that issue with the trial court in an appropriate Rule 74.06(b) proceeding. *See supra* note 14.

[18]Husband filed a motion to dismiss Wife's appeal claiming waiver by acquiescence as Wife has accepted benefits of the Judgment and has demanded that Husband comply with the Judgment. Husband's motion was taken with the case. The motion is denied.